Eric NOEL, Plaintiff–Appellant,

v.

Brian C. HALL; Sandra A. Hall, fka Sandra Johnson, Defendants–Appellees,

and

Gabrielle S. Lennartz; Herb Weisser; Michelle A. Merchant, Defendants.

No. 00–35988.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Sept. 2, 2003.

Richard L. Grant, Portland, OR, for the plaintiff-appellant.

Bryan W. Dawson, West Linn, OR, for the defendants-appellees.

Before REAVLEY,[*] KOZINSKI and W. FLETCHER, Circuit Judges.

WILLIAM W. FLETCHER, Circuit Judge.

Eric Noel and Sandra and Brian Hall are no strangers to the inside of a courtroom. This lawsuit is the fifth between Noel and Sandra Hall, and the second between Noel and Brian Hall. In this suit, Noel brought ten claims.

The district court dismissed one of Noel's claims against the Halls for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine. We reverse this dismissal. The district court dismissed Noel's nine other claims against the Halls as claim-precluded, on the ground that they should have been asserted as compulsory counterclaims in earlier state-court litigation. We affirm the district court's dismissal of six of these nine claims against Sandra Hall as claim-precluded. However, we reverse its dismissal of three of these nine claims against Sandra Hall and all nine claims against Brian Hall.

## I. Background

This unfortunate saga began in May 1995 when Eric Noel and Sandra Hall (née Johnson)[1] agreed to buy, train, and sell Red Hot Prospect—a horse that was no such thing. Hall paid the purchase price of $750, and Noel agreed to train Red as a show jumper and to pay the expenses. Noel and Hall agreed that they would eventually sell Red and share equally in what they incorrectly imagined would be a substantial profit of $30,000 to $50,000.

As part of this ill-fated bargain, Hall sold her mobile home to Noel, the $5000 sale price due and payable when they sold Red. In February 1996, Hall parked the mobile home on land leased by Noel at the Vancouver Riding Academy in Washington State, and she lived there for approximately six months. While Hall lived and worked at the Riding Academy, Noel secretly tape recorded a number of her telephone conversations. On August 15, 1996, Hall left the Riding Academy, taking Red with her. She kept Red until October 11, 1996, when she shipped Red to Noel with the understanding that he would sell Red and complete the sale for the mobile home. Red spent some time on a farm in California while Noel attempted to find buyers. Finally, in July 1998 the investment came to an unremunerative end when, pursuant to a court order, Sandra Hall consigned Red to an auction, where Brian Hall (who had become Sandra Hall's husband in 1997) purchased the horse for $710.

After Hall left the Riding Academy, Noel moved into the mobile home on Octo-

[*] Hon. Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. In 1995, Sandra Hall's last name was Johnson. She changed her name in 1997 when she married Brian Hall. For ease of discussion, we refer to her as Sandra Hall (or simply Hall) throughout.

ber 18, 1996, although at that time Red had not yet sold and Noel had not paid Hall. Noel alleges that after he moved into the mobile home, the Halls broke windows and locks on the mobile home, damaged the interior, barred Noel from entering, disconnected the power, and shut off the water. In addition, Noel alleges that in May 1997, the Halls entered the mobile home and stole the tape recordings Noel had made of Sandra Hall's telephone conversations. Noel alleges that the Halls attempted to use the recordings to force him to relinquish his interest in Red and the mobile home and to damage his business.

## A. State–Court Litigation

The unhappy collaboration between Sandra Hall and Noel resulted in four suits litigated in Washington State courts (a fifth suit was filed but never litigated): two actions concerning the mobile home in the small claims department of the Clark County District Court (eventually consolidated on appeal), one action concerning the investment in Red in the Skamania County Superior Court, and one action for violation of privacy and wiretapping laws in the Clark County District Court. We discuss each action below.

## 1. Small Claims Suits Concerning the Mobile Home

Two separate actions related to the mobile home were litigated in the small claims department of the district court in Clark County. In the first action, Sandra Hall (alone) sued Noel for $2500 in rent. The court awarded Hall $2000 plus costs on August 27, 1997. Two months later, Sandra Hall returned to small claims court with her husband Brian. The second action, brought by both Sandra and Brian Hall against Noel, sought $2500 for physical damage to the mobile home and for compensation for Noel's employees' allegedly unauthorized use of the home. In

December 1997, the small claims court awarded the Halls $1400 plus costs for the period from June through December 1997.

Noel appealed both decisions. He claimed that he owned the mobile home based on his agreement to pay Hall $5000 upon the sale of Red and asked for an injunction to stop the Halls from interfering with his use of the mobile home. The Clark County Superior Court consolidated the two appeals and held that Noel and Hall had a valid contract for the sale of the mobile home, with the $5000 purchase price payable upon the sale of Red. The court awarded Noel ownership of the home beginning October 11, 1996, the date Sandra Hall sent Red to Noel to sell it. The superior court awarded the Halls the $5000 purchase price of the mobile home plus interest from the sale date of Red.

## 2. Skamania County Superior Court Suit Concerning the Investment in Red

While the mobile home suits were pending against him, Noel filed a separate action in May 1997 in the Skamania County Superior Court against Sandra Hall for an accounting and dissolution of the partnership involving Red. Noel claimed that he and Hall had entered into a partnership agreement to purchase and train Red, which Hall had wrongfully dissolved. Hall denied the existence of a partnership in her answer. She also counterclaimed, contending that, in the event the court found a valid partnership, Noel had breached the partnership agreement, and that by tape recording her telephone conversations, he had violated state and federal wiretap statutes and had invaded her privacy.

In response to the counterclaims, Noel asserted his own counterclaims, alleging that Hall wrongfully entered his property, converted his property, slandered him by accusing him of illegal wiretapping, and violated federal wiretapping statutes her-

self. Hall moved to voluntarily dismiss her counterclaims (to which Noel had in turn counterclaimed) arising out of the tape recordings based on a pending suit in Clark County District Court. (The Clark County suit is discussed below.) Noel did not oppose the motion. In May 1998, the court dismissed the counterclaims of both Hall and Noel that were related to wiretapping and privacy, based on the pendency of the suit in Clark County District Court.

The court found that Noel and Hall had entered into an oral agreement, but not a partnership, and awarded Noel $4909 plus costs and attorney's fees. Noel appealed. In September 2000, the Washington Court of Appeals held that Noel and Hall had formed a partnership and remanded to the superior court. This suit was still pending in the superior court when the federal district court dismissed the claims in the case now before us.

### 3. Clark County District Court Suit Concerning Wiretapping and Privacy

Sandra Hall filed the final state action against Noel in Clark County District Court in January 1998, alleging violations of state and federal wiretapping statutes and violation of privacy. She alleged that Noel had intercepted private communications without her consent, had violated her right to privacy by listening to the recordings, and had used the recordings to interfere with her impending marriage by telling her fiancé of her affair with another person.

Noel's answer stated that an action asserting these claims was already pending in Skamania County Superior Court, and that that action had priority. He did not assert any counterclaims, even after his counterclaims were dismissed in the Skamania County suit. In August 1999, one year and three months after the counterclaims were dismissed in the Skamania

County suit, the court granted summary judgment to Hall. It found that Noel had tape recorded Hall's telephone conversations without her permission in violation of Wash. Rev.Code § 9.73.030 and 18 U.S.C. § 2511, and awarded her $2500 in damages and $2866 in attorney's fees and costs.

### B. The Present Suit

Noel and the Halls finally arrived in federal district court in 1999, when Noel filed the present action against Sandra and Brian Hall, as well as three other defendants, in the District of Oregon. None of the prior state-court suits had resulted in a judgment greater than $5000, but Noel—perhaps inspired (or deluded) by the grandeur of the federal setting—upped the ante. He now sought $891,563.46 in compensatory damages and $1,500,000 in punitive damages. Noel made ten claims against the Halls: (1) violation of federal wiretap law, 28 U.S.C. § 2511; (2) violation of Oregon wiretap laws, Or.Rev.Stat. § 133.739; (3) loss of use of the mobile home; (4) damage to the mobile home; (5) damage to personal property; (6) intentional interference with contractual relations; (7) breach of fiduciary duty; (8) blackmail in violation of 18 U.S.C. § 873; (9) extortion; and (10) injurious falsehood.

Claims 1, 2, 6, 8, 9, and 10 relate to Noel's wiretapping and tape recording of Sandra Hall's telephone conversations (the "wiretapping claims"). Noel alleges that the Halls removed his tape recordings of Sandra Hall's conversations from the mobile home and used the recordings to pressure him into giving up his rights to the mobile home and Red. Claims 3, 4, and 5 relate to the mobile home (the "mobile home claims"). Noel alleges that the Halls damaged the mobile home and its contents, and deprived him of its use. Claim 7 relates to partnership-based fiduciary duties between Noel and Sandra Hall (the

"partnership claim"). Noel alleges that Sandra Hall breached her fiduciary duty by attempting to convert partnership property for her sole use and by attempting to extort Noel into relinquishing his rights in Red.

The district court dismissed the partnership claim for want of subject matter jurisdiction under the *Rooker–Feldman* doctrine. It held that because Sandra Hall's fiduciary duties under the partnership were at issue in the pending action in Skamania County Superior Court, *Rooker–Feldman* barred it from exercising jurisdiction. The district court granted the Halls' motion for summary judgment on the nine wiretapping and mobile home claims based on claim preclusion. The court held that Noel should have asserted these claims as compulsory counterclaims under Washington Civil Rule 13(a) in earlier state actions, and that his failure to assert them in those actions meant that he was precluded from asserting them in the present suit. Noel brought an interlocutory appeal.[2]

We review a jurisdictional dismissal under the *Rooker–Feldman* doctrine de novo. *Canatella v. California,* 304 F.3d 843, 849 (9th Cir.2002). We review a grant of summary judgment de novo. *Oliver v. Keller,* 289 F.3d 623, 626 (9th Cir.2002). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001).

## II. Claim Dismissed Under *Rooker–Feldman*

The district court dismissed Noel's fiduciary duty claim (claim 7) against the Halls under the *Rooker–Feldman* doctrine based on the pendency of Sandra Hall's suit in Skamania County Superior Court, in which essentially the same issue of fiduciary duty was being litigated between Hall and Noel. We disagree with the district court that *Rooker–Feldman* required dismissal.

### A. The *Rooker–Feldman* Doctrine

 The *Rooker–Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under *Rooker–Feldman,* a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal. *Rooker–Feldman* is a statute-based doctrine, based on the structure and

---

**2.** Noel's claims against the three other defendants remain pending in the district court. The Halls challenge our jurisdiction to hear this interlocutory appeal, arguing for the first time in their brief to us that the district court improperly certified the dismissal of Noel's claims as final under Rule 54(b). They claim that the district court did not make the specific findings setting forth the reasons for its order that we require for interlocutory appeals. *See In re Lindsay,* 59 F.3d 942, 951 (9th Cir.1995); *Morrison–Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981) (requiring specific findings). Even if timely, we would reject the Halls' challenge to our juris-

diction. The district court order stated, "[T]here is no just reason for delay in entry of judgment and [the court] expressly directs that final judgment be entered." In *Alcan Aluminum Corp. v. Carlsberg Financial Corp.,* 689 F.2d 815 (9th Cir.1982), we held that "lack of *Morrison–Knudsen* findings is not a jurisdictional defect." *Id.* at 817. We may hear an interlocutory appeal under Rule 54(b) if it will aid in the efficient resolution of the action. *See id.; In re Lindsay,* 59 F.3d at 951. Resolving at this time whether any of Noel's claims against the Halls may proceed will manifestly aid the efficient resolution of this action.

negative inferences of the relevant statutes rather than on any direct command of those statutes. *See, e.g., In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir.2000) (en banc) (*"Rooker–Feldman* is not a constitutional doctrine. Rather, the doctrine arises out of a pair of negative inferences drawn from two statutes: 28 U.S.C. § 1331 ... and 28 U.S.C. § 1257 ....").

The principle that federal trial courts should not hear appeals from the state courts was incorporated into the original Judiciary Act of 1789. Under §§ 9 and 11 of the Act, federal district courts were courts of original jurisdiction, sitting in admiralty, and federal circuit courts were courts of original jurisdiction, sitting in diversity. *See* An Act To Establish the Judicial Courts of the United States, ch. 20, §§ 9, 11, 1 Stat. 73, 76–77, 78 (1789). They had no appellate jurisdiction over appeals from decisions of the state courts.[3] Only the Supreme Court had jurisdiction over direct appeals from state court decisions, conferred in § 25 of the Act. *See id.* § 25, 1 Stat. at 85–87.

The modern-day successors to these early statutes are, for the district court, 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1333 (admiralty), and, for the Supreme Court, 28 U.S.C. § 1257 (review of state court decisions). Under the modern statutory structure, the principle that there should be no appellate review of state court judgments by federal trial courts has two particularly notable statutory exceptions: First, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who claim that the state court has made an error of federal law. 28 U.S.C. § 2254. Second, a federal bankruptcy court has original jurisdiction under which it is "empowered to avoid state judgments, *see, e.g.,* 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.,* 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328." *In re Gruntz*, 202 F.3d at 1079.

In its routine application, the *Rooker–Feldman* doctrine is exceedingly easy. A party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties. *Rooker–Feldman* becomes difficult—and, in practical reality, only comes into play as a contested issue—when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court.

The Supreme Court has applied *Rooker–Feldman* to hold that a district court is without subject matter jurisdiction only in the two cases from which the doctrine takes its name. In *Rooker*, decided in 1923, the plaintiffs in federal court had lost a case in state court. The legal wrong alleged by the federal plaintiffs was that the state court had made errors in deciding their federal constitutional claims, rather than that the defendants had acted illegally. The federal plaintiffs brought a bill in equity seeking to have the state court judgment declared null and void because of the constitutional errors that the state court had allegedly made.

---

**3.** With the exception of a short-lived statute passed at the end of the first Adams administration, the federal circuit courts were not given general federal question jurisdiction until 1875; when that jurisdiction was given, it, too, was original rather than appellate. *See* Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, 470.

The Supreme Court in *Rooker* noted that it affirmatively appeared from the allegations in the bill that the state court had jurisdiction over the subject matter and the parties in the case, and that its judgment was therefore not void. Because the judgment was not void, the state court's alleged constitutional errors could be corrected only "in an appropriate and timely appellate proceeding." *Rooker*, 263 U.S. at 415, 44 S.Ct. 149. To reverse or modify the judgment of the state court because of such errors "would be an exercise of appellate jurisdiction" possessed only by the Supreme Court. *Id.* at 416, 44 S.Ct. 149. Since the jurisdiction of the district court is "strictly original," the Supreme Court affirmed the district court's jurisdictional dismissal of the bill with respect to those claims. *Id.* Reduced to its essence, *Rooker* held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal.

In *Feldman*, decided in 1983, the two federal plaintiffs, Feldman and Hickey, were graduates of unaccredited law schools who had petitioned to the local District of Columbia court for waivers from a court rule that, if applied, prevented them from sitting for the bar examination in the District. The rule had been promulgated by the same local court from which Feldman and Hickey sought the waivers. The federal plaintiffs petitioned the local court for waivers based on grounds of general fairness, federal antitrust law, and the Fifth Amendment. Af-

ter the local court denied their petitions, they filed suit in federal district court.

In his federal suit, Feldman named the local court and its officers as defendants; sought a declaratory judgment that the local rule violated the Fifth Amendment[4]; and sought an injunction that would require the defendants to admit him to the bar, to permit him to take the examination, or to determine whether his training and qualifications provided him the same competence as graduates of approved law schools.[5] *Feldman*, 460 U.S. at 468–69 & nn. 2–3, 103 S.Ct. 1303. The Supreme Court noted that the D.C. local court had acted both judicially and legislatively. In applying its rule to deny the individual petitions for waiver, it had acted judicially. *Id.* at 479, 103 S.Ct. 1303. In promulgating its rule, on the other hand, it had acted legislatively. *Id.* at 485–86, 103 S.Ct. 1303.

Corresponding to these two kinds of actions, the Court divided its analysis into two parts. First, the Court held that part of the federal plaintiff's suit was a forbidden de facto appeal of the judicial decision of the D.C. local court. "[T]o the extent that Hickey and Feldman sought review in the District Court of the District of Columbia Court of Appeals' denials of their petitions for waiver, the District Court lacked subject matter jurisdiction over their complaints." *Id.* at 482, 103 S.Ct. 1303. The Court does not explain precisely why this part of the federal plaintiffs' suit is a forbidden appeal. We may infer its reason, however, from its having (1) told us that the decision of the D.C. local court in denying the petitions for waiver was a judicial act, and (2) described the structure of the federal suit (*i.e.*, naming the local court and its officials as defendants, alleg-

---

**4.** Feldman and Hickey had also sought relief based on the federal antitrust laws, but the Supreme Court denied certiorari as to their antitrust claims. *See Feldman,* 460 U.S. at 474 n. 11, 103 S.Ct. 1303.

**5.** The Supreme Court does not distinguish between the structures of Feldman and Hickey's federal suits or provide a detailed description of Hickey's suit.

ing error by the local court, and seeking a remedy directly against the local court and its officers).

Second, the Court permitted the federal plaintiffs' challenge to the local court's legislative act of promulgating its rule regulating the bar examination. *Id.* at 487, 103 S.Ct. 1303. This was a challenge to the validity of the rule rather than a challenge to an application of the rule. The structure of the permitted challenge was the same as the structure of the forbidden de facto appeal (naming the local court and its officers as defendants, alleging error by the local court, and seeking a remedy directly against the local court and its officers). But because the federal plaintiffs were challenging a legislative rather than a judicial decision by the local court—and needed relief against that legislative act— it was appropriate that they structure this part of their suit in this way.

The federal plaintiffs had challenged the decisions of the local court as invalid under the Fifth Amendment, both as applied and on its face. *Id.* at 469 n. 3, 103 S.Ct. 1303. Once the Supreme Court decided that part of plaintiffs' suit was forbidden (the de facto appeal of the local court's judicial decision) and that part of their suit was permitted (the direct challenge to the local court's legislative decision), the Court had to decide what parts of the Fifth Amendment challenge were forbidden and permitted in federal court.

The Court's answer was fairly straightforward. To the extent that a Fifth Amendment issue was "inextricably intertwined" with an issue resolved by the local court in its judicial decision, the federal

district court could not address that issue, for the district court would be, in effect, hearing a forbidden appeal from the judicial decision of the local court. In the words of the Court, "[i]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision. This the district court may not do." *Id.* at 483 n. 16, 103 S.Ct. 1303. On the other hand, to the extent that a Fifth Amendment issue was not "inextricably intertwined" with a decision of the local court in a judicial proceeding, and did not "require review of a judicial decision in a particular case," the federal court had subject matter jurisdiction to address that issue. *Id.* at 486–87, 103 S.Ct. 1303.

Based on this answer, the plaintiffs' Fifth Amendment challenge broke neatly into two parts. The plaintiffs' as-applied challenge was, in effect, a request that the district court decide an issue that was "inextricably intertwined" with a judicial decision of a local court. The local court had applied the rule to the plaintiffs over their objection that the application violated the Fifth Amendment. The plaintiffs now brought essentially the same challenge in the district court. On the other hand, the plaintiffs' facial challenge was not "inextricably intertwined" with the judicial decision of the local court. Instead, it was a general challenge to the constitutionality of the rule, unrelated to any particular application.[6]

---

6. Two paragraphs near the end of the Court's opinion lay out this analysis. The first paragraph addresses plaintiffs' forbidden as-applied challenge; the second paragraph addresses plaintiffs' permitted facial challenge:

Applying this standard to the respondents' complaints, it is clear that their allegations that the District of Columbia Court of Ap-

peals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions in view of its former policy of granting waivers to graduates of unaccredited law schools, see note 3, *supra*, required the District Court to review a final judicial decision of the high-

■ So understood, the operation and purpose of the "inextricably intertwined" test in *Feldman* is fairly clear. A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with an issue resolved by the state court in its judicial decision.

The premise for the operation of the "inextricably intertwined" test in *Feldman* is that the federal plaintiff is seeking to bring a forbidden de facto appeal. The federal suit is not a forbidden de facto appeal because it is "inextricably intertwined" with something. Rather, it is simply a forbidden de facto appeal. Only when there is already a forbidden de facto appeal in federal court does the "inextricably intertwined" test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not seek to litigate an issue that is "inextricably intertwined" with the state court judicial decision from which the forbidden de facto appeal is brought. As Judge Ebel held in *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir.1991), a federal district court plaintiff was barred by *Rooker–Feldman* from seeking "to vacate and to set aside" a previously-entered state court judgment because his federal suit was a forbidden de facto appeal. The federal plaintiff was also forbidden to seek a declaratory judgment invalidating the state court rule on which the state court decision relied,[7] for the plaintiff's "request for declaratory relief [was] inextricably intertwined with his request to vacate and to set aside the [state court] judgment." *Id.*

As a practical matter, the "inextricably intertwined" test of *Feldman* is likely to apply primarily in cases in which the state court both promulgates and applies the rule at issue—that is, to the category of cases in which the local court has acted in both legislative and a judicial capacity—and in which the loser in state court later challenges in federal court both the rule and its application. Cases involving bar admission rules, such as *Feldman* itself, fall in this category. *See, e.g., Tofano v. Supreme Court of Nevada*, 718 F.2d 313 (9th Cir.1983) (involving a Nevada rule establishing a passing grade on the state bar examination). Cases involving litigation and attorney disciplinary rules also fall into this category. *See, e.g., Partington v. Gedan*, 961 F.2d 852 (9th Cir.1992) (involving a litigation rule).

The Supreme Court has never, outside of *Rooker* and *Feldman* themselves, employed the doctrine to hold that a federal

---

est court of a jurisdiction in a particular case. These allegations are inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions. The District Court, therefore, does not have jurisdiction over these elements of the respondents' complaints.

The remaining allegations in the complaints, however, involve a general attack on the constitutionality of Rule 46I(b)(3). See note 3, *supra*. The respondents' claims that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association, do not require review of a judicial decision in a particular case. The District Court, therefore, has subject-matter jurisdiction over these elements of the respondents' complaints.

*Feldman*, 460 U.S. at 486–87, 103 S.Ct. 1303.

7. Facio sought declaratory relief that the state court rule *as applied to reach a decision in his case* was unconstitutional. *Facio*, 929 F.2d at 543.

district court is without subject matter jurisdiction. The Court has barely discussed the doctrine since its decision in *Feldman,* although in three later cases it has held that the doctrine does not apply. In *Verizon Maryland Inc. v. Public Service Commission,* 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), it held that *Rooker–Feldman* does not apply to a suit in which review is sought in federal district court of "executive action, including determinations made by a state administrative agency." In *Johnson v. De Grandy,* 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994), it held that *Rooker–Feldman* does not apply to a federal court suit brought by a non-party to the state court suit. And in *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), it did not dismiss for lack of subject matter jurisdiction, but rather abstained under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also Pennzoil,* 481 U.S. at 18, 107 S.Ct. 1519 (Scalia, J., concurring) ("I do not believe that the so-called *Rooker–Feldman* doctrine deprives the Court of jurisdiction . . . .").

The Court's caution in cases after *Rooker* and *Feldman* is understandable in light of two well-established rules that would be in tension with an overly broad reading of the *Rooker–Feldman* doctrine. They are, first, the rule that overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity; and, second, the rule of 28 U.S.C. § 1738, under which a federal court must give the same preclusive effect to a state court judgment as the state courts of that state would themselves give to that judgment.

The rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system. As the Court wrote in *Atlantic Coast Line Railroad v. Broth-*

*erhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970): "[T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id.* at 295, 90 S.Ct. 1739 (citing *Kline v. Burke Constr. Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922)). The Court has recognized that this rule can produce "inefficient simultaneous litigation in state and federal courts on the same issue. . . . But this is one of the costs of our dual court system. . . ." *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 524–25, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *see also Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) ("[T]he very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system."); *Green v. City of Tucson,* 255 F.3d 1086, 1097–98 (9th Cir.2001) (en banc) (holding that parallel state and federal litigation is inherent in our legal system, and that "the possibility of duplicative litigation is a price of federalism").

The inefficiencies produced by the rule permitting simultaneous litigation in state and federal court are mitigated by a number of abstention doctrines that permit, and often require, a federal court to abstain in favor of state court litigation. They include *Younger* abstention, after *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Pullman* abstention, after *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford* abstention, after *Burford v. Sun Oil Co.,*

319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Colorado River* abstention, after *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In addition, a federal court may stay its proceedings based on comity even when none of the abstention doctrines requires that it do so. *See Deakins v. Monaghan,* 484 U.S. 193, 202–03, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). These federalism-based abstention and comity doctrines are complex and subtle, ensuring that a decision by a federal court to proceed, abstain, or stay in the face of parallel state court litigation will be made only after considering a number of case- and doctrine-specific factors.

■ The rule of interjurisdictional preclusion embodied in 28 U.S.C. § 1738, the Full Faith and Credit Act, is equally deeply rooted. The Act was first passed in 1790, a year after the first Judiciary Act, *see* Act of May 26, 1790, ch. 11, 1 Stat. 122, and has not been significantly changed since its original enactment. Section 1738 tells a federal court what to do when there has been parallel litigation in state and federal court (as permitted under the first rule), and the state court suit has gone to judgment before the federal suit. It provides that the state "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." As repeatedly construed by the Supreme Court, in decisions both before and after *Feldman,* § 1738 requires a federal district court to give the same—not more and not less—preclusive effect to a state court judgment as that judgment would have in the state courts of the state in which it was rendered. As the Court wrote in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982): "Section 1738 requires federal courts to give *the same preclusive effect* to state court judgments that those

judgments would be given in the courts of the State from which the judgments emerged." *Id.* at 466, 102 S.Ct. 1883 (emphasis added); *see also Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 369, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ("Absent a partial repeal of the Full Faith and Credit Act, 28 U.S.C. § 1738, by another federal statute, a federal court must give the judgment *the same effect* that it would have in the courts of the State in which it was rendered." (emphasis added)); *Parsons Steel,* 474 U.S. at 523, 106 S.Ct. 768 ("'[U]nder the Full Faith and Credit Act a federal court must give *the same preclusive effect* to a state-court judgment as another court of that State would give." (emphasis added)); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (same); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (same).

The Court has emphasized that § 1738 is a critical part of the architecture of federalism. "[It] not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen,* 449 U.S. at 95–96, 101 S.Ct. 411. Section 1738, designed to take into account concerns of both finality and federalism, requires a federal court to give precisely the preclusive effect to a state court judgment that the state prescribes for its own courts. If a state court judgment is not entitled to preclusive effect under the law of that state, subsequent litigation in federal court is no more precluded by that judgment than subsequent litigation in state court. The Supreme Court has never construed the *Rooker–Feldman* doctrine to give greater preclusive effect to a state court judgment in federal court than the judgment would have under § 1738. Indeed, such a construction of *Rooker–Feldman* would di-

rectly conflict with § 1738 as that statute has been construed by the Court.

## B. Development of *Rooker–Feldman*

We have never in this circuit applied the *Rooker–Feldman* doctrine so broadly as to conflict with either the rule permitting parallel state and federal litigation or the rule of § 1738 requiring federal courts to follow state preclusion rules. In seven cases in this circuit, we have held that *Rooker–Feldman* barred forbidden de facto appeals from state court decisions. To the extent there is a lead case, it is *Worldwide Church of God v. McNair,* 805 F.2d 888 (9th Cir.1986), in which disappointed state court defendants brought suit in federal district court. They named as a federal defendant the state superior court, alleged as a legal wrong that the state court jury verdict was unconstitutional, and sought an injunction against the enforcement of the state court judgment based on the verdict. We held that the federal suit was barred by *Rooker–Feldman.* To the extent the federal plaintiffs sought to bring a direct challenge to the correctness of the decision of the state court, this was a forbidden de facto appeal. To the extent they sought in the same suit to bring a more general constitutional challenge, that challenge was "inextricably intertwined" with (to the degree that it could be separated at all from) the forbidden direct appeal. *Id.* at 892–93.

In *Bianchi v. Rylaarsdam,* 334 F.3d 895 (9th Cir.2003), Bianchi had lost an appeal in front of a three-judge panel of the California Court of Appeal. He then brought a motion in that court alleging that his federal and state constitutional rights to due process had been violated because a justice whom Bianchi had disqualified when he was a judge on the California Superior Court, and who had subsequently been elevated to the Court of Appeal, sat on the appellate panel. The Court of Appeal denied the motion, and the California Supreme Court denied a Writ of Mandate asserting the same constitutional claims. *Id.* at 897. Bianchi then filed suit in federal district court against the three appellate justices who had decided his appeal claiming that his federal due process right had been violated and seeking to have the appellate court's opinion vacated and the case reassigned to a different panel. We held that the district court lacked jurisdiction because "Bianchi essentially asked the federal court to review the 'state court's denial in a judicial proceeding'" of his constitutional claim. *Id.* at 898 (quoting *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303).

In *Olson Farms v. Barbosa,* 134 F.3d 933 (9th Cir.1998), the California Agricultural Labor Relations Board ("ALRB") had held that Olson Farms ("Olson") was subject to its jurisdiction, and then held that Olson had failed to bargain in good faith with its employees. Olson sought review of that decision in the California Supreme Court, which denied review. In a separate case, the ALRB made the same jurisdictional determination for the same period. Olson appealed that decision to the California Court of Appeal, which affirmed. Olson filed suit in federal district court against the members of the ALRB, asserting as a legal wrong the allegedly incorrect jurisdictional determinations of the ALRB and the state courts. Relying on *Worldwide Church of God,* we held that Olson "sought to have the district court ... review the past jurisdictional decisions of the ALRB and the state courts," and that this was a forbidden de facto direct appeal. *Id.* at 936.

In *Partington v. Gedan,* 961 F.2d 852 (9th Cir.1992), the Hawaii Supreme Court found that Partington had violated a state court rule and assessed a $50 fine, payable to the discretionary fund of the dean of the Hawaii Law School. Partington then

brought suit in federal district court. He named as defendants the justices of the state supreme court, alleged "that the Hawaii Supreme Court justices and the dean of the law school had violated several of his constitutional rights by levying and collecting the fine," and sought a return of the $50. *Id.* at 857. Relying on *Feldman,* we wrote that Partington "asked the district court to review a specific state court decision interpreting a state court rule," and held that the district court had no subject matter jurisdiction under *Rooker–Feldman. Id.* at 865.

In *Allah v. Superior Court,* 871 F.2d 887 (9th Cir.1989), the Los Angeles Superior Court had dismissed Allah's suit for failure to comply with a discovery order. Allah then brought a pro se suit in federal district court, alleging that the dismissal by the state court violated his constitutional rights. We held that this was a forbidden de facto appeal under *Rooker–Feldman:* "To the extent that Allah requested the district court to conduct a direct review of the state court's judgment and to scrutinize the state court's application of various rules and procedures pertaining to his case, the district court lacked subject matter jurisdiction over his complaint." *Id.* at 891.

In *MacKay v. Pfeil,* 827 F.2d 540 (9th Cir.1987), the Alaska Superior Court had entered judgment against MacKay for his deceased ex-wife's expenses in enforcing a custody decree. The state court later entered a default judgment against MacKay in an action to enforce the earlier judgment. MacKay appealed neither judgment within the state court system, but instead filed suit in federal district court. He alleged that the state court had erred in finding that it had personal jurisdiction over him and in holding that the damage award was consistent with the consent decree. He sought from the district court " 'a declaration that the Purported Judg-

ment is void,' " and " 'orders restraining and enjoining the Defendants from seeking to enforce the Purported Judgment.' " *Id.* at 543 (internal quotation marks omitted). We held the federal suit barred under *Rooker–Feldman.*

Finally, in *Tofano v. Supreme Court of Nevada,* 718 F.2d 313 (9th Cir.1983), the Nevada Supreme Court had denied Tofano admission to the state bar because of his low score on the Nevada Bar Examination. Tofano filed suit against the state supreme court in federal district court, specifically challenging the decision in his own individual case and generally challenging the procedures used to grade the examination. We held that Tofano's challenge to the denial of admission by the court in his individual case was barred as a forbidden de facto direct appeal under *Feldman.* However, we upheld the district court's jurisdiction over the general challenge to the grading procedures, holding that this challenge did "not require review of [the] final state court judgment in[his] particular case." *Id.* at 314 (quoting *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303).

It is commonplace for the lower federal courts to complain that the *Rooker–Feldman* doctrine is difficult to apply. *See, e.g., Brokaw v. Weaver,* 305 F.3d 660, 664–65 (7th Cir.2002) (complaining of the difficulty); *Gottfried v. Med. Planning Servs., Inc.,* 142 F.3d 326, 330 (6th Cir.1998) ("*Rooker–Feldman* stands for the simple (yet nonetheless confusing) proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court...."); *Bates v. Jones,* 131 F.3d 843, 863 (9th Cir.1997) ("It is difficult to articulate a general rule for identifying the circumstances under which the applicability of *Rooker–Feldman* and of res judicata are not essentially coextensive. This may be what inspired a leading commentator in the field of Civil Proce-

dure to describe the *Rooker–Feldman* doctrine as 'some-what peculiar.'"); *Harris v. N.Y. State Dep't of Health*, 202 F.Supp.2d 143, 159 n. 2 (S.D.N.Y.2002) ("[C]onfusion continues in the federal courts on the relation between preclusion and the *Rooker–Feldman* doctrine." (internal quotation marks omitted)); *Zealy v. City of Waukesha*, 153 F.Supp.2d 970, 980 (E.D.Wis. 2001) ("[T]he distinction between *Rooker–Feldman* and claim preclusion is difficult to draw.").

But the Supreme Court's decisions in *Rooker* and *Feldman*, and our seven decisions applying the *Rooker–Feldman* doctrine to deny jurisdiction, fall into a relatively clear pattern: It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court. There are two kinds of cases in which such a forbidden de facto appeal might be brought.

First, the federal plaintiff may complain of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court. This was the case in *Feldman*, where the local court had refused to grant to the federal plaintiffs a waiver of the local bar admission rule. This was also the case in *Partington*, where the Hawaii Supreme Court had assessed a fine against the federal plaintiff, and in *Tofano*, where the Nevada Supreme Court had refused to admit the federal plaintiff to the state bar.

Second, the federal plaintiff may complain of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants. This was the case in *Rooker*, where the state court had already decided a case between two sets of private litigants. The disappointed state court litigants then brought suit in federal court asserting as their legal injury the state court judgment based on an alleged legal error committed by that court. This was also the case in *Worldwide Church of God*, where the federal plaintiff complained of legal injury caused by a judgment based on an allegedly unconstitutional jury verdict; in *Bianchi* where the federal plaintiff complained of legal injury caused by the state Court of Appeal judgment refusing to set aside the earlier judgment despite the failure of an appellate justice to recuse himself; in *Olson Farms*, where the federal plaintiff complained of legal injury caused by state court decisions based on an allegedly incorrect holding that the ALRB had jurisdiction over Olson; in *Allah*, where the federal plaintiff complained of legal injury caused by the state court judgment allegedly wrongly dismissing his case; and in *MacKay*, where the federal plaintiff complained of legal injury caused by the state court judgment based on its allegedly incorrect holdings that it had personal jurisdiction over him and that his actions violated the consent decree.

■ On the other hand, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker–Feldman* does not bar jurisdiction. If the federal plaintiff and the adverse party are simultaneously litigating the same or a similar dispute in state court, the federal suit may proceed under the long-standing rule permitting parallel state and federal litigation. *See, e.g., Atl. Coast Line*, 398 U.S. at 295, 90 S.Ct. 1739 ("[T]he state and federal courts had concurrent jurisdiction in this case," and the parties could "simultaneously pursu[e] claims in both courts."). Or if the federal plaintiff and the adverse party

have already litigated the state court suit to judgment, the federal plaintiff may be precluded from relitigating that dispute under the interjurisdictional preclusion rule of 28 U.S.C. § 1738. *See, e.g., Kremer*, 456 U.S. at 466, 102 S.Ct. 1883 ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."). In neither situation does *Rooker–Feldman* bar subject matter jurisdiction in federal district court, for in neither situation is the federal plaintiff complaining of legal injury caused by a state court judgment because of a legal error committed by the state court. Rather, in both situations, the plaintiff is complaining of legal injury caused by the adverse party.

We believe that the following general formulation describes the distinctive role of the *Rooker–Feldman* doctrine in our federal system: If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction. If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded under § 1738. But in neither of these circumstances does *Rooker–Feldman* bar jurisdiction. This formulation of the *Rooker–Feldman* doctrine is consistent with the two cases themselves; with all our cases holding that *Rooker–Feldman* bars jurisdiction; with the two long-estab-

lished rules permitting simultaneous state and federal litigation, and requiring federal courts to apply the preclusion rules of the states under § 1738; and with many (though not all) of the formulations of the *Rooker–Feldman* doctrine in other circuits.

Of the formulations in the other circuits, we find most notable (and most useful) the similar formulation of the Seventh Circuit, first articulated at some length by Judge Easterbrook in *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir.1993):

> [B]oth [*Rooker–Feldman* and preclusion] define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would.... The *Rooker–Feldman* doctrine, by contrast, has nothing to do with § 1738. It rests on the principle that district courts have only original jurisdiction.... The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.
>
> ....
>
> ... To put this differently, the injury of which GASH complains was caused by the judgment, just as in *Rooker, Feldman*, and *Ritter* [*v. Ross*, 992 F.2d 750 (7th Cir.1993) ]. GASH did not suffer an injury out of court and then fail to get

relief from state court; its injury came from the [state court] judgment ....

The *GASH* formulation has been repeated, with slight variations, many times in the Seventh Circuit. *See, e.g., Garry v. Geils,* 82 F.3d 1362, 1366–67 (7th Cir.1996) ("[T]he distinction between a federal claim alleging injury caused *by* a state court judgment (necessarily raising the *Rooker–Feldman* doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential res judicata problem but not a *Rooker–Feldman* problem) has been recognized in this circuit at least since our decision in *GASH.*" (emphasis in original)); *Jensen v. Foley,* 295 F.3d 745, 747–48 (7th Cir.2002) ("The *Rooker–Feldman* doctrine, generally speaking, bars a plaintiff from bringing a § 1983 suit to remedy an injury *inflicted by* the state court's decision.... Preclusion, on the other hand, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify." (emphasis in original)); *see also Lewis v. Anderson,* 308 F.3d 768, 772 (7th Cir.2002) (same); *Durgins v. City of E. St. Louis,* 272 F.3d 841, 844 (7th Cir.2001) (same); *Rizzo v. Sheahan,* 266 F.3d 705, 714 (7th Cir.2001) (same); *Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 702 (7th Cir.1998) (same); *Young v. Murphy,* 90 F.3d 1225, 1231 (7th Cir.1996) (same).

### C. *Rooker–Feldman* and Noel's Fiduciary Duty Claim

█ Applying our general formulation of the *Rooker–Feldman* doctrine to Noel's fiduciary duty claim is straight-forward. When the district court dismissed this claim, Sandra Hall and Noel were litigating a very similar, perhaps identical, fiduciary duty claim in Hall's state court suit in Skamania County. The magistrate judge applied the "inextricably intertwined" analysis of *Feldman* to conclude that, "because [the fiduciary duty claims] could have been raised in the parties' Skamania County litigation, or were already specifically addressed in that litigation," the federal claims are barred under *Rooker–Feldman,* and the district court adopted the magistrate judge's analysis. This was error.

The "inextricably intertwined" analysis of *Feldman* applies to defeat federal district court subject matter jurisdiction only when a plaintiff's suit in federal district court is at least in part a forbidden de facto appeal of a state court judgment, and an issue in that federal suit is "inextricably intertwined" with an issue resolved by the state court judicial decision from which the forbidden de facto appeal is taken. This was the case presented in *Feldman* itself, and in our decision in *Worldwide Church of God.* We have never held that when there are simultaneous suits in state and federal court, in which related or "inextricably intertwined" claims are being litigated, the federal suit must be dismissed under *Rooker–Feldman.* Indeed, we could not so hold without violating the rule that permits simultaneous state and federal suits involving not only inextricably intertwined, but even *identical,* claims. The Supreme Court has repeatedly stated that simultaneous state and federal litigation of overlapping, and even identical, issues is an important feature of our federal system, *see, e.g., Parsons Steel,* 474 U.S. at 524–25, 106 S.Ct. 768; *Doran v. Salem Inn,* 422 U.S. at 928, 95 S.Ct. 2561; *Atl. Coast Line,* 398 U.S. at 295, 90 S.Ct. 1739, and we will not interpret the *Rooker–Feldman* doctrine to destroy that feature.

The pending suit in Skamania County Superior Court therefore does not prevent Noel from pursuing his fiduciary duty claim simultaneously in his federal court suit, and we reverse the district court's dismissal of that claim.

### III. Claims Dismissed as Claim–Precluded

#### A. Inapplicability of *Rooker–Feldman*

■ As a preliminary matter, we decide that Noel's nine wiretapping and mobile home claims are not barred by the *Rooker–Feldman* doctrine. As with Noel's fiduciary duty claim, above, applying our general formulation of *Rooker–Feldman* is straightforward. When the district court dismissed these claims as claim-precluded, Sandra Hall and Noel had already litigated very similar claims to judgment in state court. In asserting his wiretapping and mobile home claims in federal district court, Noel thus sought to litigate claims that under Washington law possibly should have been asserted in that state court litigation.

Noel's suit in federal district court was not a forbidden de facto appeal of the earlier state court judgments. In bringing his federal district court suit, Noel sought to litigate claims that were related to claims that had already been litigated, but Noel neither asserted as a legal wrong an allegedly erroneous decision by the state court in the earlier state court litigation nor sought relief from the state court judgment. Rather, he asserted as legal wrongs allegedly illegal acts committed by a party against whom he had previously litigated, and sought to litigate related claims against that party. Therefore, Noel's ability to sue in federal court is limited by § 1738 and the state law of claim preclusion, not by *Rooker–Feldman*.

The claims Noel sought to litigate in federal district court were clearly related to claims that had gone to judgment in the earlier state court litigation. Indeed, because the federal and state court claims arose out of the same sequence of interrelated events, the issues in the federal and state court litigation were almost certainly inextricably intertwined in the ordinary language sense. But the issues were not "inextricably intertwined" in the sense of *Rooker–Feldman*. Because Noel has not brought a forbidden de facto appeal from any of the earlier state court judgments, the "inextricably intertwined" analysis of *Feldman* does not apply. The district court thus properly exercised subject matter jurisdiction to analyze the claims under state claim preclusion law as required by § 1738.

#### B. Claim Preclusion Analysis

We now consider whether Noel's nine wiretapping and mobile home claims against the Halls were or should have been litigated in the earlier state proceedings, and are therefore claim-precluded in this court. Neither the parties nor the district court believed that the *Rooker–Feldman* doctrine was applicable to these claims. For the reasons explained in Parts II and III.A, we agree. We therefore consider whether the claims should have been dismissed as claim-precluded.

Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of state courts. Section 1738 does not allow federal courts to employ their own preclusion rules in determining the preclusive effect of state judgments. "Rather, it ... commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *accord Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). Thus, we apply Washington law to determine the claim-preclusive effects of the earlier rounds of state-court litigation between Noel and the Halls.

The district court applied § 1738 to hold that Noel's wiretapping and mobile home claims were claim-precluded under state law as unasserted compulsory counter-

claims. We agree in part and disagree in part with that conclusion. We hold that Noel's six wiretapping claims against Sandra Hall (claims 1, 2, 6, 8, 9, and 10) are claim-precluded as unasserted compulsory counterclaims. Noel should have asserted these claims as counterclaims in Sandra Hall's 1998 Clark County District Court suit, in which Sandra Hall accused Noel of wiretapping and privacy violations for tape recording her telephone conversations. We hold, however, that Noel's wiretapping claims against Brian Hall (claims 1, 2, 6, 8, 9, and 10) are not claim-precluded because Brian Hall was not a party to the 1998 Clark County District Court suit. We also hold that Noel's three mobile home claims against both Halls (claims 3, 4, and 5) were not compulsory counterclaims and are not claim-precluded under Washington law. The mobile home was the subject of the Halls' 1997 Clark County small claims suit, in which the Halls sought compensation for physical damage to the mobile home and for unauthorized use of the home. But Washington's compulsory counterclaim rule does not apply in small claims court, and no other aspect of Washington preclusion law bars Noel from bringing his claims now. We therefore reverse the district court's dismissal of the wiretapping claims against Brian Hall and the mobile home claims against both Halls.

### 1. Wiretapping Claims

#### a. Jurisdiction

■ Under Washington law, when a court lacks jurisdiction over the subject matter of a counterclaim, it cannot hear and determine the issues raised in the claim. Thus, the failure to assert a counterclaim under such circumstances does not act as a bar to a subsequent action in a proper forum. *See Centennial Flouring Mills Co. v. Schneider,* 16 Wash.2d 159, 132 P.2d 995, 998 (1943); 3A Lewis H. Orland & Karl B. Teglund, Washington Practice 303 (4th ed.1992). Noel argues that his wiretapping claims were not compulsory counterclaims because the damages he sought exceeded the Clark County District Court's statutory limit, and therefore it lacked jurisdiction to hear his claims. We disagree.

Noel's current wiretapping claims far exceed the $35,000 jurisdictional limit of the Clark County District Court.[8] However, the Washington Rules for Courts of Limited Jurisdiction ("CRLJ") provide a remedy for this problem. CRLJ 14A provides:

> When a defendant, third party defendant, or cross-claimant in good faith asserts a claim in an amount in excess of the jurisdiction of the district court or seeks a remedy beyond the jurisdiction of the district court, the district court shall order the entire case removed to superior court.

CRLJ 14A(b); *see* 4B Karl B. Teglund, Washington Practice 317 (6th ed.2002) (noting that CRLJ 14A was enacted to avoid splitting causes of action). Because Washington procedural rules would have required the district court to remove the case to superior court, we find no merit in Noel's jurisdictional argument. *See J & J Drilling, Inc. v. Miller,* 78 Wash.App. 683, 898 P.2d 364, 367 (1995).

■ Noel also argues that the Clark County District Court lacked jurisdiction to consider his federal wiretapping claims. Again, we find no merit in his argument. Noel claims that only a "court of competent jurisdiction" may hear cases arising under the federal wiretapping statute, and that a state court is not such a court. The

---

8. At the time, the jurisdictional limit for civil suits in district court in Washington was $35,000. This limit has subsequently been raised to $50,000. *See* Wash. Rev.Code § 3.66.020.

provision he cites, 18 U.S.C. § 2518(1), concerns which judges may authorize wiretap orders; it has nothing to do with civil suits. The provision authorizing civil actions, 18 U.S.C. § 2520, includes no jurisdictional restriction. *See Allen v. McCurry*, 449 U.S. 90, 103–05, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (holding that a state-court judgment on a question of federal law is entitled to preclusive effect in federal court). Because Noel's jurisdictional argument fails, we move on to consider the application of Washington's compulsory counterclaim rule.

### b. Washington's Compulsory Counterclaim Rule

Washington's compulsory counterclaim rule, Civil Rule ("CR") 13(a), provides:

> **Compulsory Counterclaims:** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action. . . .

CR 13(a); CRLJ 13(a).[9] "If a party does not assert a compulsory counterclaim, that party is barred from asserting that claim as an independent claim or as a counterclaim in any other action." *Krikava v. Webber*, 43 Wash.App. 217, 716 P.2d 916, 918 (1986). The Washington Supreme Court has adopted "[a] liberal and broad construction of Rule 13(a)" to "avoid a

multiplicity of suits." *Schoeman v. N.Y. Life Ins. Co.*, 106 Wash.2d 855, 726 P.2d 1, 5 (1986).

Under Washington's Rule 13(a), the criteria for a compulsory counterclaim are that the claim must arise from the same transaction or occurrence, must not require parties over whom the court may not assert jurisdiction, must not be the subject of a pending action, and must lie against an opposing party. We address each of these requirements separately.

#### i. Same Transaction or Occurrence

Washington has adopted a "logical relationship" test to determine whether a claim and counterclaim arise from the same transaction or occurrence:

> "[C]ourts should give the phrase 'transaction or occurrence that is the subject matter' of the suit a broad realistic interpretation in the interest of avoiding a multiplicity of suits. . . . [A]ny claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim."

*Id.* at 6 (quoting *Rosenthal v. Fowler*, 12 F.R.D. 388, 391 (S.D.N.Y.1952)) (first alteration in original). All nine of Noel's claims dismissed by the district court on summary judgment arose from events surrounding the same horse, same mobile home, and same tape recordings as those in the state-court suits.

Noel's wiretapping claims all relate to the tape-recorded conversations found in the mobile home. These recordings were the subject of Sandra Hall's 1998 suit against Noel in Clark County District Court. In that suit, Sandra Hall claimed that Noel had intercepted private commu-

---

**9.** The relevant portions of Washington Civil Rule 13, Washington Civil Rule for Courts of Limited Jurisdiction 13, and Federal Rule 13 are identical. *See* CR 13; CRLJ 13; Fed. R.Civ.P. 13. A small claims court in Wash-
ington is a department of the district court, which is a court of limited jurisdiction. *See* Wash. Rev.Code 12.40 (governing small claims court).

nications, listened to them without her consent, and used embarrassing information to humiliate her. Noel now claims that in May 1997 the Halls entered the mobile home and stole the tapes, disclosed the contents of the tapes to discredit him, and attempted to use the tapes to extort and blackmail him and to interfere with his business. We conclude that the two sets of claims are "logically related" within the meaning of Washington law. *See id.* at 6.

### ii. Presence of Additional Parties

Noel asserts that his wiretapping claims are not unasserted compulsory counterclaims under Rule 13(a) because they involve three additional parties—Gabrielle Lennartz, Michelle Merchant, and Herb Weisser—over whom the Washington courts could not have acquired jurisdiction. Noel alleges that Lennartz, Merchant, and Weisser conspired with the Halls to use the tape-recorded conversations removed from the mobile home against him in various ways. Noel argues that he could not have asserted counterclaims against these three defendants in the Clark County District Court suit concerning the wiretapping violations because that court could not have asserted personal jurisdiction over them.

Even if we assume that Washington courts could not have acquired personal jurisdiction over these three defendants, for Noel's argument to be valid, they would have had to have been so important to Noel's counterclaims that they would have been not merely necessary but indispensable parties under Washington's Rule 19, thus requiring the dismissal of the counterclaims in their absence. *See* CRLJ 19(a); *Harvey v. Bd. of County Comm'rs,* 90 Wash.2d 473, 584 P.2d 391, 392 (1978). Noel has made no showing that these three defendants would have been indispensable parties to any otherwise compulsory counterclaims in Washington State courts.

Moreover, we do not agree with Noel's assertion that Washington State courts would not have been able to acquire personal jurisdiction over Lennartz, Merchant, and Weisser. Under Washington law, "the following factors must coincide" for there to be personal jurisdiction over a nonresident defendant: "(1) The nonresident defendant ... must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction ... must not offend traditional notions of fair play and substantial justice." *Shute v. Carnival Cruise Lines,* 113 Wash.2d 763, 783 P.2d 78, 80 (1989) (internal quotation marks omitted); *see* Wash. Rev.Code § 4.28.185. Noel accuses Lennartz, Merchant, and Weisser of conspiring to use the tapes removed from the mobile home to injure him and his business. Based on these actions, Washington courts could have asserted personal jurisdiction over them under Washington law. These actions also satisfy the minimum contacts requirement of the federal Due Process Clause. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### iii. Pending Actions

Washington's Rule 13(a) excuses a defendant from asserting an otherwise compulsory counterclaim if "at the time the action was commenced the claim was the subject of another pending action." Noel argues that his wiretapping claims are not barred as unasserted compulsory counterclaims because on January 29, 1998, when Sandra Hall filed her complaint against Noel in Clark County District Court for privacy and wiretap violations, Noel had pending in superior court in Skamania County a claim relating to the tape-recorded conversations under the federal wire-

tapping statute, 18 U.S.C. §§ 2511–2520. On May 28, 1998, however, four months after Hall filed her complaint in the Clark County District Court, the Skamania court, following Hall's unopposed motion for voluntary dismissal, dismissed both Hall and Noel's wiretapping claims. The court explained that another action was pending in Clark County District Court and "Clark County would be a forum more convenient to the parties."

When the Skamania court dismissed the wiretapping claims, Noel had already filed his answer in Clark County District Court two months earlier, on March 27, 1998. In his answer, Noel had raised as a defense the fact that the action was already pending in Skamania County. Although Noel argued in his answer that the Skamania County action had priority, he did not oppose the motion to dismiss the wiretapping claims from the Skamania County lawsuit. Noel then elected not to amend his pleadings in the Clark County action to assert his wiretapping claims as counterclaims in that suit. Under Washington Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." CRLJ 15(a); *see also Wilson v. Horsley,* 137 Wash.2d 500, 974 P.2d 316, 319 (1999) (discussing liberal amendment policy under the identically worded CR 15(a)). Although Noel would have had to seek permission from the Clark County District Court to amend his pleading to assert his wiretapping claims, we can see no bar in Washington law to such an amendment.

We have found no Washington authority interpreting the pending claim exception to Rule 13(a). The purpose of the exception, however, is to prevent Party A from forcing Party B, who has a pending claim against Party A in another forum, into a forum of Party A's choosing. *See Union Paving Co. v. Downer Corp.,* 276 F.2d 468, 470 (9th Cir.1960) (interpreting the analogous federal Rule 13(a)). Here, the Ska-

mania County Superior Court dismissed the pending claims specifically to allow the parties to litigate all the wiretapping claims in the Clark County District Court. Noel neither opposed the motion to dismiss, nor argues to us that he could not have asserted his wiretapping claims in the Clark County suit after they were dismissed from the Skamania County suit. We therefore conclude that Noel's failure to amend his pleadings in the Clark County suit does not now allow him to escape the characterization of his unasserted claims in that court as compulsory.

### iv. Opposing Party

Rule 13(a) makes compulsory only counterclaims against an opposing party in the lawsuit. Noel's wiretapping claims are logically related to and thus should have been brought as counterclaims in Sandra Hall's Clark County wiretapping and privacy suit. Therefore, Noel should have brought his wiretapping claims *against Sandra Hall* in the Clark County suit, and they are now precluded as unasserted compulsory counterclaims.

Brian Hall, however, was not a plaintiff—and thus not an opposing party—in Sandra Hall's Clark County suit. Therefore, Noel's wiretapping claims against him were not compulsory counterclaims in that suit. The Washington courts have adopted a strict reading of Rule 13(a)'s requirement that a pleader must bring compulsory counterclaims against "any opposing party." In *Nancy's Product, Inc. v. Fred Meyer, Inc.,* 61 Wash.App. 645, 811 P.2d 250 (1991), the Washington appeals court held:

> To interpret the term "opposing party" in the context of the court rules so as to include a nonparty with an adverse interest is a non sequitur. We hold that an opposing party for purposes of CR 13(a) is one who asserts a claim against

the prospective counterclaimant in the first instance.

*Id.* at 253.

Thus, even though Noel's present claims were compulsory counterclaims in the earlier suit as to Sandra, they were not as to Brian. We therefore reverse the district court's grant of summary judgment for Brian Hall with respect to Noel's wiretapping claims (Claim 1, 2, 6, 8, 9, and 10).

### 2. Mobile Home Claims

■ The district court also dismissed Noel's mobile home claims as unasserted compulsory counterclaims under Washington Rule 13(a). Rule 13(a), however, does not apply in Washington small claims court. Washington Civil Rule for Courts of Limited Jurisdiction 81(a) provides that Washington's Civil Rules do not apply in small claims court. CRLJ 81(a) ("These rules do not apply to proceedings in small claims court."); *cf. Last Chance Riding Stable, Inc. v. Stephens,* 66 Wash.App. 710, 832 P.2d 1353 (1992) (holding that CRLJ 81(a) prevents CRLJ 73(b), governing the timing of appeals, from applying in small claims court). Therefore, Noel's mobile home claims cannot be precluded as unasserted compulsory counterclaims by the operation of Washington Rule 13(a) in the Halls' small claims suit.[10]

■ Independent of Rule 13(a), judgments from small claims court may still preclude later claims under judge-made Washington preclusion doctrine. *See State Farm Mut. Auto. Ins. Co. v. Avery,* 114 Wash.App. 299, 57 P.3d 300, 305 (2002)

("The small claims court's limited jurisdiction does not preclude [a party] from asserting issue preclusion as a defense."). In this case, however, we conclude that Washington law does not preclude Noel's present mobile home claims.

■ Under Washington law, claim preclusion operates with respect to both claims that were litigated and claims that should have been litigated in a prior action. *Meder v. CCME Corp.,* 7 Wash.App. 801, 502 P.2d 1252, 1254 (1972); *Restatement (Second) of Judgments* § 22(2) (1982) (stating that the failure to bring a counterclaim will preclude a later action on that claim either if the jurisdiction has a rule so saying or if a successful prosecution of the later action would impinge upon the earlier judgment). But a party is not claim-precluded from bringing a claim "which could not have been ... litigated during [a] prior action." *Meder,* 502 P.2d at 1254. If a counterclaim cannot properly be pleaded in a suit because the amount of the counterclaim is beyond the jurisdiction of the state court, a judgment in that suit will not preclude a defendant from bringing a separate action. *See Centennial Flouring Mills Co. v. Schneider,* 16 Wash.2d 159, 132 P.2d 995, 998 (1943); 3A Lewis H. Orland & Karl B. Teglund, Washington Practice 303 (4th ed.1992).

■ Noel currently seeks damages for his mobile home claims far in excess of the $2500 jurisdictional limit of the small claims court where the Halls' earlier mobile home-related suits were filed.[11] The

**10.** The Halls' small claims suit did go up on appeal to the Clark County Superior Court where Washington Civil Rule 13(a) does apply. But as we read Washington law, claims which need not be asserted in small claims court do not become compulsory on appeal. Wash. Rev.Code § 12.36.055 (1997) (superceded) (discussing appeals from small claims court and noting that the superior court should conduct a de novo trial as "nearly as

possible in the manner of the original small claims trial" and barring new pleading without the written permission of the superior court).

**11.** The jurisdictional limit in the small claims department of the Washington district court was, at the time, $2500. It has since been raised to $4000. *See* Wash. Rev.Code § 12.40.010.

Halls argue that Washington law provides a method for Noel to have asserted his counterclaims exceeding the jurisdictional limit of the small claims court simultaneously in superior court (which has no monetary jurisdictional limit), and that because Noel failed to take advantage of this channel his mobile home claims are claim-precluded.[12]

> Wash. Rev.Code § 12.40.027 provides:
>
> [C]ounterclaims ... by a defendant ... in excess of the jurisdiction of small claims court may be maintained simultaneously in superior court as a separate action brought by such defendant.... Such a superior court action does not affect the jurisdiction of the small claims court to hear the original small claims case. The decision of the small claims court shall have no preclusive effect on the superior court action brought pursuant to this section.

According to the Washington Court of Appeals, § 12.40.027 "protects small claims plaintiffs by preventing the defendant from exploiting the limited jurisdiction of the court and forcing removal of the action to superior court simply by filing a counterclaim in excess of the jurisdictional amount." *Avery*, 57 P.3d at 304. Instead, defendants may proceed simultaneously in superior court without fear that a judgment rendered by the (presumably faster-moving) small claims court will have preclusive effect on their superior court action. *Id.* Section 12.40.027 is permissive, and we do not read it as an analog to a compulsory counterclaim rule. Noel's failure to bring a simultaneous superior court action asserting his mobile home claims thus does not preclude him from raising them now.

We therefore reverse the district court's dismissal of Noel's mobile home claims (claims 3, 4, and 5) against the Halls.

## IV. Conclusion

We REVERSE the district court's dismissal of Noel's fiduciary duty claim against the Halls (claim 7). We AFFIRM the district court's dismissal of Noel's wiretapping claims against Sandra Hall (claims 1, 2, 6, 8, 9, and 10). We REVERSE the district court's dismissal of Noel's wiretapping claims against Brian Hall (claims 1, 2, 6, 8, 9, and 10). Finally, we REVERSE the district court's dismissal of Noel's mobile home claims against both of the Halls (claims 3, 4, and 5).

The parties shall bear their own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**12.** CRLJ 14A, which provides for the automatic removal of cases to the superior court when a counterclaim exceeds the jurisdictional limit of the district court, and which rendered Noel's jurisdictional argument regarding his wiretapping claims unavailing, does not apply in small claims court. *See* CRLJ 81(a).