David NORMANDEAU, Plaintiff,

v.

CITY OF PHOENIX; Jones, Skelton & Hochuli; Stacey K. Stanton, Division Director of the Motor Vehicle Department, Defendants.

No. CIV 03–0316–PHX–ROS.

United States District Court,
D. Arizona.

April 12, 2005.

David Normandeau, Phoenix, AZ, pro se.

John T. Masterson, Esq., Eileen Joan Dennis Gilbride, Jones Skelton & Hochuli PLC, James Nelson Smith, Jr., Office of the Attorney General, Liability Management Section, Phoenix, AZ, for Defendants.

## OPINION

ROSLYN O. SILVER, District Judge.

Acting pro se, Plaintiff filed an action pursuant to 42 U.S.C. § 1983 against Defendants (Doc. # 1), alleging violations of his constitutional rights arising from numerous traffic citations he received in 1989 and 1990 which eventually resulted in suspension of his driver's license. On March 31, 2004, the Court entered an order (Doc. # 40) granting Defendant Stacey K. Stanton's Motion to Dismiss (Doc. # 7), Motion for Judgment on the Pleadings by Defendant City of Phoenix (Doc. # 11), and Motion to Dismiss on Behalf of Defendant Jones, Skelton & Hochuli (Doc. # 12), which disposed of this action. In its March 31, 2004 Order the Court also denied as moot Plaintiff's Motion for Preliminary Injunction (Doc. # 21), Plaintiff's Motion for Preliminary Injunction # 2 (Doc. # 32), Defendant City of Phoenix's Motion to Strike Plaintiff's "Supplement" to his Response to the City's Motion for Judgment on the Pleadings (Doc. # 29), and Defendant City of Phoenix's Request for Summary Disposition of Defendant City of Phoenix's Motion for Judgment on the Pleadings (Doc. # 19). The Court stated that a written opinion would follow. This is that opinion.

## I. BACKGROUND

Plaintiff was stopped while driving his car in Phoenix, Arizona on July 7, 1989 and was cited for driving with an expired registration and without proof of insurance. [Doc. # 1, ¶ 15]. After appearing in Phoenix Municipal Court ("City Court") and pleading guilty, Plaintiff was fined $420.00 and he requested an extended payment plan. [*Id.*]. Plaintiff failed to make any payments, after which the City Court allowed him 30 days to pay the fine before his license would be revoked. [*Id.*]. Plaintiff was subjected to subsequent traffic stops on October 5, 8, 20, and 22, 1989 while driving either to or from work, and was cited each time for driving on an expired registration and without proof of insurance. [*Id.* ¶ 7].

After failing to appear in City Court with regard to the October 1989 citations, Plaintiff was fined an additional $3,040.00, which he refused to pay. [*Id.* ¶¶ 12–13]. Thereafter, default judgments were entered against him in City Court for failure to appear, and he was notified that if he did not remit the entire $3,468.00 he then owed, the Motor Vehicle Division of the Arizona Department of Transportation ("MVD") would be asked to suspend Plaintiff's driver's license pursuant to A.R.S. § 28–1080 until the amount owing was paid. [*Id.*]. MVD subsequently suspended Plaintiff's license.

Plaintiff continued to drive and was stopped again in Phoenix on March 9, 1990, and was again cited for driving on a suspended license, with an expired registration and with no proof of insurance. [*Id.* ¶ 16]. This time, Plaintiff appeared in City Court where he was found guilty. [*Id.*]. He was fined $1,102.00 on the charge of driving without proof of insurance, and $600.00 for driving on a suspended license. [*Id.*]. Plaintiff served a seven-day jail term to satisfy the fine for driving on a suspended license. Plaintiff's license remains suspended today, more than 14 years later. [*Id.* ¶ 20].

Plaintiff, acting pro se, filed the instant Complaint on February 19, 2003 against the City of Phoenix, the Phoenix law firm

of Jones, Skelton & Hochuli ("JSH"), and Stacey K. Stanton, Division Director of the MVD, in her official capacity. Plaintiff alleges that he was fined and had his driver's license revoked without due process of law in violation of the Fourteenth Amendment, and was further subjected to unreasonable searches and seizures in violation of the Fourth Amendment. [Doc. # 1, ¶¶ 4, 10]. Plaintiff also alleges that Jones, Skelton & Hochuli were the "ringleaders" in a conspiracy with the City of Phoenix and MVD to initiate the traffic stops giving rise to Plaintiff's license revocation and traffic fines (*id.* ¶¶ 6–8); that A.R.S. § 28–1601 (formerly A.R.S. § 28–1080) is unconstitutional on its face and as applied to him (*id.* ¶ 23); that his fine of $1,102.00 for lack of proof of insurance violated the protections of the Eighth Amendment against excessive fines and was cruel and unusual punishment (*id.* ¶ 29); that he was denied his right of access to the courts due to "harassment" by the City of Phoenix and JSH in the form of repeated traffic stops and citations (*id.* ¶¶ 33, 37); and that MVD operates a "52–state" computer network pursuant to which Arizona and other states share outstanding traffic citation and license suspension information [1] which is not authorized by the Constitution (*id.* ¶¶ 40–41).

Plaintiff requests declaratory judgments declaring that: (1) his traffic stops and citations in October 1989 constituted harassment and abuse of power, and that the stops, citations, default judgments, and license suspensions were acts intended to further the alleged conspiracy to deprive Plaintiff of his Fourth Amendment right to remain free of unreasonable searches and seizures and of his due process rights under the Fourteenth Amendment; (2) his due process rights were denied regarding his citations dated July 7, 1989 and March

9, 1990; (3) that A.R.S. § 28–1601 is unconstitutional on its face and as applied to him; and (4) the Multi–State Highway Transportation Act notification program is unconstitutional. [Doc. # 1, pp. 23–25].

Plaintiff further asks the Court to order that his October 1989 and March 1990 citations be overturned, that he be refunded $ 500.00 in fines paid, and that his driver's license suspension be lifted. [*Id.*]. Additionally, Plaintiff requests a temporary restraining order and preliminary injunction enjoining Defendant Stacey K. Stanton from suspending his driver's license, and enjoining the MVD from notifying other states of Plaintiff's license suspensions, and from denying Plaintiff a license based on his license suspensions in other states. [*Id.*]. Finally, Plaintiff asks for compensatory damages of $2,000,000.00 and punitive damages of $5,000,000.00 against JSH. [Doc. # 1, p. 25].

As noted, Defendants Stanton and JSH moved to dismiss the Complaint pursuant to Rule 12(b), Fed.R.Civ.P. [Docs. Nos. 7, 12]. The City of Phoenix moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.

## II. MOTIONS TO DISMISS

### A. Legal standard for dismissal under Rule 12(b)(6) and Rule 12(c)

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni,* 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles,* 957 F.2d 652, 654 (9th Cir.1992)). "The federal rules require only a 'short and plain statement of the claim showing that

---

1. The pleadings reveal that Plaintiff refers to the Multi–State Highway Transportation

Agreement codified in Arizona at A.R.S. § 28–1821, *et seq.*

the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir.1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). " 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.*

It is well established that pro se complaints, "however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quotation marks omitted); *see Ortez v. Wash. County*, 88 F.3d 804, 807 (9th Cir.1996) ("Because Ortez is a pro se litigant, we must construe liberally his inartful pleading[.]") (citation omitted). "In civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988).

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the

district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), all allegations of fact by the non-moving party are accepted as true. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (1988). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Id.* Where judgment on the pleadings is based on failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). *Id.* Not only must the court

accept the allegations of the complaint as true, but the allegations will be construed and doubts resolved in the light most favorable to the plaintiff. That said, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *Id.*

### B. Stanton's Motion to Dismiss

Defendant Stanton argues that the Complaint should be dismissed against her for the following reasons: (1) the Complaint names her in her official capacity, and official capacity suits are barred as a matter of law; (2) the Complaint is barred by the statute of limitations; (3) the *Rooker–Feldman* doctrine bars the Complaint; (4) all federal claims asserted are barred pursuant to the doctrine announced in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); (5) the Complaint fails to state a claim against her on which relief can be granted; (6) any state law claims alleged against her are barred because Plaintiff failed to provide notice of claim as required by A.R.S. § 12–821.01(A); (7) Plaintiff did not properly serve Stanton; and (8) the Complaint fails to raise any valid constitutional issue implicating her. [Doc. # 7, p. 1].

### C. JSH's Motion to Dismiss

JSH contends that the Complaint is barred by the statute of limitations and by the *Heck v. Humphrey* doctrine. JSH further argues that the Complaint is barred under the doctrine of res judicata

### D. City of Phoenix's Motion for Judgment on the pleadings

Arguing for judgment on the pleadings, the City of Phoenix also contends that the Complaint is barred by the statute of limitations, by the *Heck v. Humphrey* doctrine, and under the doctrine of res judicata. Additionally, the City of Phoenix asserts that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 and that the

declaratory relief Plaintiff requests is not available to challenge a state court conviction.

## III. DISCUSSION

### A. Lack of jurisdiction—*Rooker-Feldman* Doctrine

■■■ Defendant Stanton argues that this Court lacks jurisdiction to consider Plaintiffs Complaint under the *Rooker–Feldman* doctrine, which "bars parties from seeking a horizontal appeal from a state-court ruling by filing suit in a federal district court because federal district courts may only exercise original jurisdiction and may not exercise appellate jurisdiction over state court decisions". [Doc. # 7, pp. 3–4]. Stanton contends that to entertain Plaintiff's claims against the State defendants, this Court could not avoid reviewing the city court decisions convicting Plaintiff, which Plaintiff could have appealed to Maricopa County Superior Court, but did not. [*Id.*, p. 4].

■■■ "Disappointed state court litigants sometimes attempt to overturn state court rulings in federal court § 1983 actions." 1 Martin A. Schwartz, *Section 1983 Litigation* § 1.07[B] (4th ed.2003). "This endeavor is frequently doomed to failure." *Id.* Under the *Rooker–Feldman* doctrine, lower federal courts do not have subject matter jurisdiction to conduct appellate review of state court proceedings. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct.App. v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine applies not only to claims that were actually raised before the state court, but pursuant to res judicata and collateral estoppel, also to claims that are "inextricably intertwined" with state court determinations. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303; *see also Noel v. Hall,* 341 F.3d 1148 (9th Cir.2003). *Rook-*

er–Feldman requires a party seeking review of a state court judgment to pursue relief through the state court system and ultimately to the United States Supreme Court.[2] *See* 28 U.S.C. § 1257; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149; *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303. The doctrine stems in part from a recognition of the fact that "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court." *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995).

■■■■ In assessing whether the *Rooker–Feldman* doctrine applies, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996). "If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 702 (7th Cir.1998). "By contrast, if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker–Feldman* doctrine does not apply[.]" (*Id.*) The central inquiry is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.,* 92 F.3d 506, 510 (7th Cir.1996).

■■■■ As the Ninth Circuit put it, "[w]here the only redress [sought] is an undoing of the prior state court judg-

ment," subject matter jurisdiction is "clearly barred under *Rooker–Feldman.*" *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir.2003) (quotations omitted). The court "'cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint.'" *Id.* (quoting *Kenmen Eng'g v. City of Union,* 314 F.3d 468, 476 (10th Cir.2002)) (emphasis in original). Rather, "[it] must pay close attention to the *relief* sought by the federal-court plaintiff." *Id.* (citing *Kenmen Eng'g,* 314 F.3d at 476) (emphasis in original). When the plaintiff asserts "as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel,* 341 F.3d at 1156. The federal district court "must refuse to hear the forbidden appeal." *Id.* at 1158. "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.*

Plaintiff believes the *Rooker–Feldman* Doctrine does not apply, arguing he never had the chance to raise his constitutional claims in State court. [Doc. # 14 ¶ 4]. He asserts that, with regard to traffic citations, he could only appeal his traffic citations to County Superior Court, not to Arizona appellate courts, and that in any event, the only post-suspension process available to him was to pay the fines. [*Id.*].

Plaintiff's Complaint on its face demonstrates that this Court lacks jurisdiction under the *Rooker–Feldman* doctrine to review Plaintiff's claims regarding his traffic

---

**2.** There are two "notable statutory exceptions" to this rule. *Noel,* 341 F.3d at 1155. "First, a federal district court has original jurisdiction to entertain petitions for habeas corpus brought by state prisoners who claim that the state court has made an error of federal law." *Id.* (citing 28 U.S.C. § 2254). "Second, a federal bankruptcy court has original jurisdiction under which it is empowered to avoid state judgments; to modify them; and to discharge them." *Id.* (citations and quotations omitted).

citations and license suspensions. First, Plaintiff asks the Court to enter declaratory judgment that his October 1989 traffic citations, on which the municipal court ordered default judgment for Plaintiff's failure to appear, were unconstitutional. [Doc. # 1, p. 23]. Plaintiff requests similar relief concerning his citations dated July 7, 1989 and March 9, 1990. [*Id.*, p. 24]. Second, Plaintiff requests this Court to "overturn the convictions" entered regarding those citations, "[throw] the tickets out of court," and lift the driver's license suspensions. [*Id.*, pp. 23–24]. Third, Plaintiff asks for declaratory judgment that A.R.S. § 28–1601 (former § 1080) is unconstitutional as applied to him, and on its face. [*Id.*, p. 24].

The requested relief by this Court would violate the *Rooker–Feldman* doctrine. Most obviously, because Plaintiff asks the Court to find a specific Arizona statute unconstitutional as state courts have applied it to him, to comply with Plaintiff's request would require this Court to find that the state courts erred. Moreover, although Plaintiff did not raise his constitutional claims in state court, he could have and should have. The relevant state rules of procedure provided Plaintiff with the right to appeal to the Superior Court his final order or judgment in his civil traffic case. Rule 29, Arizona Rules of Procedure in Civil Traffic Violation Cases (17B, A.R.S.). *See also* A.R.S. § 22–425 (either party may appeal from a municipal court to the superior court). While Plaintiff contends, without any legal authority, that Arizona Superior Courts lack jurisdiction to hear constitutional questions, that is not the case. *See, e.g., State v. Martin,* 174 Ariz. 118, 120–21, 847 P.2d 619, 621–22 (Ct.App.1992). Further, although Arizona law provided plaintiff no "explicit further

right of appellate review" beyond state superior court regarding his traffic citations, *see State v. Poli,* 776 P.2d 1077, 1079, 161 Ariz. 151, 153 (Ct.App.1989), this does not permit jurisdiction in federal district court to review and hold unconstitutional a state court's decision. Plaintiff's complaint that he "never had a realistic opportunity to fully and fairly litigate [his] claims" in state court is incorrect. He had that opportunity, but declined to take it.

Accordingly, pursuant to *Rooker–Feldman,* the Court lacks jurisdiction to review Plaintiff's claims arising from his various traffic citations adjudicated in City Court or to issue declaratory judgment. This jurisdictional bar applies to all of Plaintiff's claims with the exception of his allegations regarding MVD's participation in the "52-state" computer network, because they are based on events subsequent to Plaintiff's license suspension, and Plaintiff could not have raised these claims in the state court proceedings adjudicating his citations. Because the Court lacks jurisdiction to review Plaintiff's claims with the one exception noted,[3] the Court will grant Defendants' motions to dismiss on all other claims.

The Court will, however, address Defendants' remaining arguments for dismissal on the merits.

**B. The Statute of Limitations bars Plaintiff's Complaint**

Defendants point out that the traffic citations giving rise to the Complaint occurred in 1989 and 1990, no fewer than 14 years ago. Accordingly, they argue that the statute of limitations on all of Plaintiff's federal and state law claims has long since expired, and that the Complaint is time-barred. Plaintiff counters by arguing

---

**3.** As discussed below, the Court holds that Plaintiff's claim regarding the Multi-State Highway Transportation Act is subject to dis-

missal on statute of limitations grounds, and for failure to state a claim.

that because his driver's license remains suspended, Defendants continue to commit daily "overt acts" in furtherance of a conspiracy. [Doc. # 14, pp. 3–4]. Additionally, Plaintiff asserts that the revocation of his license falls within the "continuing wrong doctrine," citing *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir.1995).

 "[T]he statute of limitations defense ... may be raised by a motion to dismiss ... [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980) (citing *Graham v. Taubman*, 610 F.2d 821 (9th Cir.1979)). However, even if the relevant dates alleged in the complaint are beyond the statutory period, the " 'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.' " *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir.1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.1995)). Indeed, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R.Civ.P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' " *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999) (citing *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir.1991) (quoting *Jablon*, 614 F.2d at 682)). " 'Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.' " *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo*, 68 F.3d at 1206); *see also Federal Civil Procedure Before Trial* § 9:194, at 9–48, § 9:214.1, at 9–57.

 Section 1983 does not contain a specific statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). The Supreme Court has determined that the relevant statute of limitations for all § 1983 claims, regardless of the facts or legal theory of the particular case, is the forum state's statute of limitations for personal injury actions. *Wilson*, 471 U.S. at 274–76, 105 S.Ct. 1938. The Court reasoned that, "among the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract," *Id.* at 277, 105 S.Ct. 1938. In Arizona, the statute of limitations for personal injury actions is two years, as is set forth in A.R.S. § 12–542. *TwoRivers*, 174 F.3d at 991 (citing *Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir.1986)).

 To determine the timeliness of a claim, a court must establish whether a plaintiff has alleged "discrete acts" that would be unconstitutional occurring within the limitations period. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir.2002) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). When borrowing a state statute of limitations for a federal cause of action, "we borrow no more than necessary." *West v. Conrail*, 481 U.S. 35, 39–40, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Consistent with this principle is the idea that federal law, not state law, determines when a civil rights action arises. *See Elliott v. City of Union City*, 25 F.3d 800, 801–802 (9th Cir.1994). Under federal law, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir.1998).

### 1. Continuing conspiracy

 Plaintiff believes that the continued suspension of this driver's license constitutes an "overt act[ ] causing damage in furtherance of the alleged conspiracy" to violate his constitutional rights, resulting in a continuing wrong. [Doc. # 14 ¶ 3]. This argument has no merit. The continuation of a conspiracy beyond the date when injury occurs does not alone extend the statute of limitations. *Compton v. Ide,* 732 F.2d 1429, 1432 (9th Cir.1984), abrogated on other grounds by *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Gibson v. United States,* 781 F.2d 1334, 1340 (9th Cir.1986) ("[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.'") (citations omitted). The Ninth Circuit has applied the "last overt act" doctrine in determining the point of accrual for civil conspiracies, requiring that "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff." *Gibson,* 781 F.2d at 1340 (citing *Venegas v. Wagner,* 704 F.2d 1144, 1146 (9th Cir. 1983); *Lawrence v. Acree,* 665 F.2d 1319, 1324 (D.C.Cir.1981)). Plaintiff mistakenly construes the continuing, "daily" *impact* of the suspension of his driver's license and unpaid fines as reoccurring overt *acts* in furtherance of the alleged conspiracy.

### 2. Continuing violation doctrine

 Plaintiff also urges a variation on his argument that a continuing conspiracy tolls the statute of limitations applicable to his claims; that is, that the ongoing suspension and unpaid fines represent a "continuing violation" of his constitutional rights. The "continuing violation" theory applies to § 1983 claims. *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir.2001) (citing *Gutowsky v. County of Placer,* 108 F.3d 256, 259 (9th Cir.1997)). The Supreme Court recently addressed the continuing violations doctrine in the context of Title VII violations in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Reviewing a Ninth Circuit decision, the Court noted that the Ninth Circuit recognized two ways to demonstrate a continuing violation under the doctrine "allowing courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" 536 U.S. at 107, 122 S.Ct. 2061 (quoting *Morgan v. National R.R. Passenger Corp.,* 232 F.3d 1008, 1014 (9th Cir.2000)). The Supreme Court observed that Ninth Circuit jurisprudence permitted a plaintiff to establish a continuing violation either by showing: (1) a "serial violation," where the alleged acts of discrimination outside the limitations period are demonstrated to be sufficiently related to similar acts within the limitations period; or (2) a "systemic violation" resulting from a "systemic policy or practice of discrimination that operated, in part, within the limitations period...." *Id.* (quoting 232 F.3d at 1015–16). The Court rejected the "serial violation" basis for a continuing violation claim, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113, 122 S.Ct. 2061. The Ninth Circuit in *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045 (9th Cir.2002) applied *Morgan* to a § 1983 claim based on discrete time-barred acts.

 In arguing that Defendants' actions fall within the limitations period, Plaintiff does not allege that Defendants have committed discrete illegal actions after 1990. Instead, the gravamen of his claim is that the impacts on him from his license suspension and the assessment of

fines, such as the inability to drive and maintain his employment, are themselves discrete illegal acts. As set forth above, discrete illegal acts do not escape the statute of limitations challenge. Moreover, the continuing *impacts* from past violations of § 1983 are not actionable. *Knox,* 260 F.3d at 1013 (citing *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979)). *See also Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981) ("[a] continuing violation is occasioned by unlawful acts, not by continual ill effects from an original violation.... Continuing non-employment resulting from an original action is not a continuing violation.").

 Plaintiff has not alleged that since suspending his license, MVD has refused to accept his payment or has otherwise rebuffed his attempts to have the suspension lifted. Instead, it is plain that Plaintiff knew of his alleged injury no later than 1991. In fact, as is discussed below, Plaintiff filed a complaint in 1991 with this Court alleging most of the claims reasserted here. Regarding Plaintiff's claims addressing MVD's participation in the Multi–State Highway Transportation Agreement, the Complaint indicates that Plaintiff was aware of his alleged injury no later than 1995, which would mean that the two-year limitations period ran several years prior to Plaintiff's filing of this Complaint. Accordingly, the Court finds that each claim alleged in the Complaint is time-barred.

**C. Res Judicata**

 Defendants City of Phoenix and JSH argue that because Plaintiff filed a lawsuit in this Court in 1991 raising the same issues he now raises, his claims are barred by the doctrine of res judicata.

 The doctrine of res judicata, or claim preclusion, bars relitigation of claims in a subsequent action between the same parties or their privies of a final judgment that has been entered on the merits. *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Res judicata will apply when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001) (quoting *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997)).

Plaintiff counters that res judicata does not apply because he did not have a full and fair opportunity to litigate his prior case as he was under "enormous" distress and "didn't know what to do or how to do it." [Doc. # 15]. Plaintiff further explains that he "developed serious drinking and gambling problem[s] in an attempt to relieve the stress" he experienced.[4] [Doc. # 22 ¶ 4]. As a result, Plaintiff explains, the issues in his prior action were never litigated. [*Id.*].

*1. Plaintiff's Complaint in CIV 91–1989–PHX–RGS*

On December 13, 1991, Plaintiff filed a complaint in the United States District Court, District of Arizona alleging various claims under 42 U.S.C. §§ 1983 and 1985. [Doc. # 20, Att.]. Plaintiff named as defendants the State of Arizona, the MVD, a past MVD Director, the then-present

---

**4.** Plaintiff states in his Reply that the City of Phoenix "chased [him] out of town in 1993 with a set of 5 traffic tickets on 8/30/1993 for two alleged violations of driving on a suspended driver's license, a registration violation, an insurance violation, and a license plate violation." [Doc. # 22 ¶ 4]. He alleges that the City of Phoenix ticketed him because it knew he was attempting to prosecute his action in federal court, and that he eventually "couldn't take it anymore," so he migrated to Nevada. [*Id.*].

MVD Director, the City of Phoenix, the City of Phoenix Municipal Court, the "Tolleson D.P.S." and the Phoenix Police Department. [*Id.*]. Plaintiff alleged he was denied due process by the City of Phoenix and MVD, among others, when MVD suspended his driver's license without either a pre-suspension or post-suspension hearing, in violation of the Fifth and Fourteenth Amendments. [Doc. # 20, Att.]. Plaintiff further alleged this violated his right to equal protection under the Fourteenth Amendment, and constituted an excessive fine or cruel and unusual punishment in violation of the Eighth Amendment. [*Id.*]. These claims were based on Plaintiff's citations dated July 7, 1989, and October 5, 8, 20, and 22, 1989, which citations are also at issue here. [*Id.*]. Included in a lengthy list of injuries, Plaintiff complained of the loss of a property right in his driver's license. Plaintiff requested declaratory relief, asking, among other relief, that the Court declare A.R.S. § 28–1080 unconstitutional on its face and as applied to him. [*Id.*]. Additionally, Plaintiff requested $200,000.00 in actual damages, $200,000.00 in compensatory damages, and $10,000,000.00 in punitive damages. [*Id.*].

In an Order filed on January 21, 1992, Judge Strand initially dismissed a number of Plaintiff's claims, as follows: (1) any claims under § 1985 because Plaintiff failed to allege membership in a class afforded federal assistance in protecting its civil rights; (2) claims against the State of Arizona, the Arizona Department of Transportation, and the Arizona Department of Public Safety, reasoning that a state or state agency may not be sued in federal court without its consent, and that a state or its agencies are not "persons" under § 1983; (3) claims against the City of Phoenix and the Phoenix Police Department, finding that Plaintiff had not alleged that an established policy or custom caused him to suffer the deprivation of a constitutional right; and (4) the Phoenix Municipal Court, noting that a court is not a "person" as that term is used in § 1983. [CIV 91–1989–PHX–RGS, Doc. # 6]. The Court further noted that an answer was required from the individual former director and then-present director of the MVD "based on the standard for 'frivolousness' in civil rights cases discussed" in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and *Jackson v. State of Arizona*, 885 F.2d 639 (9th Cir.1989). [*Id.*].

Plaintiff moved to reopen the case so that he could add a large number of new defendants, delete defendants, amend his pleadings and "add new pleadings." [CIV 91–1989–PHX–RGS, Doc. # 8]. Contemporaneously, Petitioner filed a Motion for Injunctive Relief Setting Aside Alleged Convictions and Other Injunctive Relief and Declaratory Judgements. [CIV 91–1989–PHX–RGS, Doc. # 9]. The Magistrate Judge ordered the above two pleadings stricken for violation of the pleading requirements of the Federal Rules of Civil Procedure and the Rules of Practice of the United States District Court for the District of Arizona. [CIV 91–1989–PHX–RGS, Doc. # 12]. Further, the Magistrate Judge reminded Plaintiff that failure to properly serve his complaint by May 10, 1992 without showing good cause would be grounds for dismissal of the action. [*Id.*]. The record reflects that service of the complaint against the two individual defendants remaining in the action went unexecuted. [CIV 91–1989–PHX–RGS, Docs. # 13, # 14]. The Court held a Show Cause Hearing on January 3, 1994, at which the Plaintiff appeared telephonically. [CIV 91–1989–PHX–RGS, Doc. # 16]. The Court allowed Plaintiff to file an amended complaint within 30 days, but warned him that the case would be dismissed without further notice if Plaintiff failed to do so. [*Id.*]. When Plaintiff failed

to file an amended complaint, the Court ordered the matter dismissed and Judgment was entered. [CIV 91–1989–PHX–RGS, Docs. # 17, # 18].

### 2. Identity of claims

 "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Owens,* 244 F.3d at 714 (quoting *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir.2000)). New claims may be barred as subject to res judicata if they are based on the same nucleus of facts and such claims could have been raised in the earlier action. The Ninth Circuit has instructed;

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.

*Barajas v. Northrop Corp.,* 147 F.3d 905, 909 (9th Cir.1998) (citations omitted).

Both this Complaint and Plaintiff's 1991 Complaint are based on his traffic citations in 1989 and resulting suspension of his driver's license. Overlapping claims in the complaints include Plaintiff's allegations of denial of due process when his driver's license was suspended without a hearing, his claim that the fines were excessive and violated the Eighth Amendment, and that A.R.S. § 28–1601 (former § 28–1080) is unconstitutional on its face and as applied to him. Plaintiff's additional claims in the instant Complaint alleging an unreasonable search and seizure, and denial of access to the courts, are each based on the same transaction and events that were known to Plaintiff when he filed his 1991 Complaint and could have been raised in such Complaint. Thus, each is a "ground[ ] for recovery which could have been asserted, whether they were or not ... on the same cause of action." *Owens,* 244 F.3d at 714 (quoting *Gregory v. Widnall,* 153 F.3d 1071, 1074 (9th Cir.1998)).

### 3. Final judgment on the merits

 Plaintiff contends that dismissal of his 1991 federal action was not a final judgment on the merits because he did not have the opportunity to litigate his claims. Plaintiff's argument is meritless. The 1991 Complaint was dismissed for failure to prosecute. Unless specified otherwise, a dismissal for failure to prosecute "operates as an adjudication on the merits." Fed. R.Civ.P. 41(b). Accordingly, "involuntary dismissal generally acts as a judgment on the merits for the purposes of *res judicata,* regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims." *In re Schimmels,* 127 F.3d at 884. *See also Owens,* 244 F.3d at 714 (citing *Johnson v. United States Dep't of Treasury,* 939 F.2d 820, 825 (9th Cir. 1991)) (dismissal for want of prosecution is "treated as an adjudication on the 'merits' for purposes of preclusion").

### 4. Identity or privity between the parties

 The concept of privity in the res judicata context is "a legal conclusion 'designating a person so identified in interest with a party to former litigations that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels,* 127 F.3d at 881 (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 94 (5th Cir.1977)). Relationships deemed by federal courts to

be sufficiently close to support a finding of privity and preclusion under res judicata include: a non-party who has succeeded to a party's interest in property; a non-party who controlled the original suit; a non-party whose interests were represented adequately by a party in the original suit; parties between which there is a "substantial identity"; a relationship where the interests of the party and non-party are "so closely aligned as to be virtually representative"; and "when there is an express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." *In re Schimmels*, 127 F.3d at 881. *See also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081–82 (9th Cir. 2003) ("We made clear, in *In re Schimmels*, that privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases[.]") (also citing *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) ("Moreover, although there are clearly constitutional limits on the 'privity' exception, the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term.") and *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980) ("Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata.")).

■ Defendants JSH and Stacey K. Stanton were not named as defendants in Plaintiff's 1991 Complaint. Ms. Stanton, whom Plaintiff sued in her official capacity as Director of MVD, is in privity with the MVD, which was a defendant in the 1991 Complaint. An action against a government officer in her official capacity is ordinarily equivalent to an action against the government entity itself. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (1991);

*McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir.1985). Here, Plaintiff has not alleged any actions by Ms. Stanton that are separate and distinct from the alleged actions of the MVD. Plaintiff is barred by res judicata from prosecuting his complaint against Ms. Stanton.

■ As for JSH, the record does not establish the relationship between JSH and the defendants named in Plaintiff's 1991 Complaint. JSH speculates that it has been named because it frequently represents the City of Phoenix. However, there is insufficient evidence to establish privity between JSH and the City of Phoenix. JSH argues that while it was not a party to the 1991 Complaint, it may still raise the affirmative defense of res judicata pursuant to *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 333, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), which JSH explains recognized that "in certain circumstances, [the] mutuality requirement need not be satisfied to assert [the] affirmative defense of res judicata." [Doc. # 16, p. 2]. JSH does not, however, explain how the mutuality requirement need not be satisfied in these circumstances. The Court concludes that Plaintiff's claims against JSH are not barred under the doctrine of res judicata. Those claims, however, are otherwise dismissed for lack of jurisdiction under the *Rooker–Feldman* doctrine and as time-barred, as is explained above.

**D. Plaintiff's claim regarding his conviction is barred by *Heck v. Humphrey***

■ Each Defendant argues that Plaintiff's Complaint is barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). JSH and the City of Phoenix argue that the Complaint is barred under *Heck* to the extent that the Complaint, if

successful, would imply the invalidity of Plaintiff's traffic stops and state court convictions. Ms. Stanton also contends that Plaintiff does not have a cognizable cause of action for damages under § 1983.

The Supreme Court in *Heck v. Humphrey* directed lower courts to consider whether or not a judgment in favor of a plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487, 114 S.Ct. 2364. If it would, the § 1983 action must be dismissed unless the plaintiff can prove

> that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction nor sentence that has not been so invalidated is not cognizable under § 1983.

*Id.,* 512 U.S. at 486–87, 114 S.Ct. 2364. On the other hand, if a judgment in favor of the plaintiff would not necessarily imply the invalidity of the plaintiff's conviction or sentence, then the action should be allowed to proceed unless there exists some other bar to the suit. *Id.,* 512 U.S. at 487, 114 S.Ct. 2364. Where a Plaintiff has been convicted, and where a constitutional issue which is inextricably interrelated to the Plaintiff's issue would resolve the matter had it been appealed and reversed by the appellate court, then no basis exists for a civil cause of action under *Heck.* This determination is made without reference to whether the constitutional issue *was actually raised* by the defendant in his criminal trial, as the existing outcome of Plaintiff's state appeals process is not an element of the test for determining whether a claim is cognizable under *Heck.* Rather, the Court looks to what the state court would or could have held if it had been presented with the constitutional issue. If a judgment in favor of Plaintiff would "necessarily imply the invalidity of his conviction," then he may not bring his claim under § 1983; conversely, § 1983 claims should be allowed to proceed if success on them would not necessarily imply the invalidity of an outstanding criminal judgment against Plaintiff. *Id.,* 512 U.S. at 487, 114 S.Ct. 2364.

Because Plaintiff's complaint seeks to invalidate his criminal conviction relating to his March 9, 1990 citation for driving with a suspended license, and that conviction has not otherwise been ruled invalid, that claim is barred by *Heck.* As is otherwise noted, this claim is also time-barred and subject to dismissal under the *Rooker–Feldman* doctrine.

### E. Other motions to dismiss

Defendants Stanton and City of Phoenix have asserted a number of other cumulative grounds for dismissal, which in light of the above-discussed rulings, need not be addressed further: (1) Stanton may not be sued in her official capacity [Doc. # 7, pp. 2–3]; (2) the Complaint fails to state a claim against Stanton [*Id.,* pp. 5–6]; (3) Plaintiff failed to submit a notice of claim pursuant to A.R.S. § 12–821.01(A) [*Id.,* p. 6]; (4) Plaintiff failed to properly serve Stanton [*Id.,* pp. 8]; (5) Plaintiff did not raise a constitutional claim regarding legislative enactments [*Id.,* pp. 6–8]; (6) the Complaint fails to state a § 1983 claim against the City of Phoenix [Doc. # 11, p. 3]; (7) the Court lacks jurisdiction over Plaintiff's claim for declaratory relief [*Id.,* p. 4].

## IV. OTHER MOTIONS

### A. Plaintiff's Motions for Preliminary Injunction

Plaintiff filed two motions for preliminary injunction requesting injunctive relief

enjoining MVD and Defendant Stanton from: (1) enforcing A.R.S. § 28–1601 driver's license suspensions against Plaintiff regarding his citations dated July 7, 1989; October 8, 20, and 22, 1989; and March 9, 1990; and (2) denying Plaintiff an Arizona driver's license based on Plaintiff's driver's license suspensions in California and Nevada. [Doc. # 21, p. 14; Doc. # 32, pp. 2, 10]. Because the Court finds that Plaintiff's claims underlying his motion for injunctive relief are barred and otherwise lack merit, it will deny the motions as moot.

### B. City of Phoenix's Motion to Strike

On July 3, 2003, Plaintiff filed a Supplement for Plaintiff's Responce (sic) to Defendant City of Phoenix's Motion for Judgment on the Pleadings. [Doc. # 28]. The purpose of this motion was to file in the record a "Notice of Claim" Plaintiff was "delivering" to the City of Phoenix "in the event at a latter (sic) date this Court allows plaintiff to amend his complaint to include pendant state causes of action." [*Id.*, p. 1]. In response, Defendant City of Phoenix filed a Motion to Strike Plaintiff's "Supplement" to His Response to the City's Motion for Judgment on the Pleadings (Doc. # 29) arguing that the notice of claim was untimely by a decade or more, that Plaintiff's Complaint is legally deficient, and that Plaintiff had failed to raise any state claims or moved the Court to amend his Complaint. Because the Complaint will be denied for the reasons given above, Defendant City of Phoenix's Motion to Strike is moot and will be denied.

### V. CONCLUSION

The Court holds that it lacks jurisdiction under the *Rooker–Feldman* doctrine to review Plaintiff's claims that Plaintiff previously raised in state court or were inextricably intertwined with the state court determinations. All claims asserted in the Complaint are affected by this jurisdictional bar except the claim alleging the unconstitutionality of MVD's participation in the Multi–State Highway Transportation Act. That claim, however, is time-barred, as are all other claims alleged in the Complaint. Moreover, Plaintiff's claims against the City of Phoenix and Ms. Stanton are subject to dismissal under the doctrine of res judicata. Further, Plaintiff's claim regarding his conviction arising from his March 9, 1990 citation is barred under the rule announced in *Heck v. Humphrey.*

For these reasons, Defendants' motions to dismiss have been granted. Additionally, Plaintiff's Motion for Preliminary Injunction, and Defendant City of Phoenix's Motion to Strike Plaintiff's "Supplement" to His Response to the City's Motion for Judgment on the Pleadings have each been denied as moot.